1

2

3

4

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   WILLIAM A. PROCTOR,                    No. CIV S-96-1401-RRB-CMK

12              Petitioner,                 DEATH PENALTY CASE

13         vs.                              <u>ORDER</u>

14   ROBERT L. AYERS, JR., et al.,

15              Respondents.

16   _____/

17            Petitioner, a state prisoner proceeding with appointed counsel, seeks a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  A case management conference was held before the

19   undersigned on January 8, 2008, where the court and parties discussed a litigation plan for the

20   remainder of Phase III (initial merits briefing; fact development; motion for evidentiary hearing).[1]

21   / / /

22   / / /

23   / / /

24   / / /

25   _____

26        [1]        By separate order, the court has approved a supplemental Phase III budget for
     petitioner's counsel.

## I.  BACKGROUND

This case arises from the murder of a Burney, California, woman in 1982. Petitioner filed his original petition on July 31, 1996.  See People v. Proctor, 4 Cal.4th 499 (1992); Proctor v. California, 512 U.S. 967 (1994).  On August 5, 1996, the Federal Public Defender was directed to enter an appearance on behalf of petitioner and identify whether outside counsel would need to be appointed.  James S. Thomson and Jolie Lipsig were appointed on September 18, 1996.  This case proceeds on the amended petition, lodged on December 17, 1997. Following exhaustion in state court, respondent filed an answer on October 14, 2004.

## II.  PHASE III CASE MANAGEMENT PLAN

### A.      Initial Merits Briefing

Pursuant to a prior case management order, the parties have briefed most of the guilt phase claims raised in the amended petition and the undersigned issued findings and recommendations on May 15, 2007.[2]  With respect to these findings and recommendations, the court vacated due dates for the parties to file objections pending approval of a supplemental Phase III budget.  The court will now set due dates regarding objections.  Specifically, each side will be given an opportunity to file objections of their own and to respond to objections filed by the other side.  No further briefing on the findings and recommendations is contemplated and upon filing of objections and responses thereto, the matter will be submitted to the district judge for final decision.

/ / /

---

[2]      Claims A through T are petitioner's guilt phase claims.  Claims U through NN (except Claims AA1, AA2, and AA3, in which petitioner alleges ineffective assistance of counsel at the guilt phase trial) are petitioner's penalty phase claims and have not been briefed.  Claims B, E, I, T, V, X, Z, BB, DD, FF, KK, LL, and MM have been dismissed.  The court has recommended that Claims A, C, D, F, G, H, J, K, L, M, N, O, Q, R, and S be denied on the merits.  As to Claim P, the court recommended that the claim be addressed at a later stage in these proceedings.

1    At the January 8, 2008, hearing, the court discussed with the parties the potential

2  for resolution on the merits of five selected penalty phase claims.

3        1.    Claims W, Y, CC, and NN

4        In Claims W, Y, CC, and NN, petitioner raises the following arguments:

5    Claim W        Trial court improperly denied petitioner's motion under Batson v.
                    Kentucky, 476 U.S. 79 (1986).

6
     Claim Y        Prosecutorial misconduct by misstating the law during closing.
7                   The portion of this claim based on the prosecutor's comment that
                    circumstantial evidence is "the best evidence in the world" has
8                   been dismissed.

9
     Claim CC       Trial court error by failing to instruct the jury that the special
10                  circumstances should be considered as one factor.

11   Claim NN       Petitioner's death sentence violates international law (this claim
                    has been dismissed except "to extent that the claim does not rely
12                  upon alleged violations of . . . United States treaties.").

13        As to each of these five claims, respondents' counsel indicated in his belief that

14  they can be resolved on the merits on the existing record without the need for discovery.

15  Petitioner's counsel disagreed.  Initially, petitioner's counsel expressed their belief that the

16  phased litigation approach to capital cases in this circuit does not contemplate "piecemeal"

17  merits briefing of claims.  Rather, they suggested that all merits briefing should be conducted

18  only after an evidentiary hearing is held.  The court disagrees with counsel's interpretation of the

19  phased litigation approach.  Specifically, Phase III contemplates "initial merits briefing," which

20  clearly indicates that some merits resolution may be appropriate before an evidentiary hearing is

21  held, which occurs, if at all, in Phase IV.  This is consistent with the reality that, often times,

22  some claims raised in a habeas corpus petition can be resolved on the record as it existed in the

23  state court and do not require fact development.

24  / / /

25  / / /

26  / / /

Petitioner's counsel also argued that the specific claims identified by the court cannot be resolved without discovery and/or an evidentiary hearing.  In particular, as to Claims W, Y, CC, and NN, counsel stated that each of these claims has an ineffective assistance of counsel component and that, for this reason, the claims cannot be resolved without an evidentiary hearing.  A review of the amended petition reflects otherwise.  In Claim W, petitioner asserts trial court error, not trial counsel error, and that his claim that appellate counsel was ineffective for failing to raise this issue on direct appeal is set forth in Claim JJ.  In Claim Y, petitioner alleges prosecutorial misconduct, not trial counsel error, and specifically states that trial counsel's failure to object is the subject of Claim AA12.  In Claim CC, petitioner alleges trial court error, and that trial counsel's failure to object is raised separately in Claim AA14.  Finally, Claim NN alleges violation of international law, and that the counsel's failure to raise the issue are the subjects of Claims JJ and KK.  Therefore, the court concludes that the ineffective assistance of counsel components of Claims W, Y, CC, and NN are all preserved elsewhere in the amended petition.

Having considered the parties' arguments, the court finds that it would be appropriate to consider further Phase III initial merits briefing on Claims W, Y, CC, and NN.

2.   Claim EE

The district judge previously assigned to this case (Judge Levi) described Claim EE in his March 30, 2005, order granting respondent's motion to dismiss.  Judge Levi observed that Claim EE "challenges the California death penalty scheme on several grounds: (1) that the California scheme does not adequately narrow the class of death-eligible offenders because the special circumstances embrace almost anyone convicted of first-degree murder; (2) that California's death penalty scheme does not require juries to make any record of the grounds upon which it imposed the death penalty or prosecutors to disclose the basis upon which they decide to seek the death penalty; and (3) that a district attorney, rather than the California attorney general, determines whether to seek the death penalty in any given case."  Judge Levi initially dismissed this claim in its entirety.  However, on July 28, 2005, he issued an order granting, in part,

petitioner's motion for reconsideration.  Specifically, Judge Levi reinstated ". . . the portion of Claim EE which raises an equal protection challenge to the California death penalty scheme based on an alleged failure to provide uniformity in charging decisions from county to county." This is all that remains of Claim EE.

Consistent with Judge Levi's description of the remaining portion of Claim EE, petitioner's counsel offer the following description in their motion for leave to conduct formal discovery regarding this claim:

> In refined Claim EE, petitioner asserts that his death sentence violates the Fourteenth Amendment because the law under which he was sentenced denies equal protection of the laws.  Petitioner alleges that the arbitrary implementation of the death penalty violates the Equal Protection Clause because it fails to provide assurances that the rudimentary requirements of equal treatment and fundamental fairness are satisfied. . . . [T]he Supreme Court has reconfirmed that fundamental rights cannot be denied based upon arbitrary and disparate statewide "standards."  Bush v. Gore, 531 U.S. 98 (2000).
>
> * * *
>
> California is comprised of 58 counties.  Each county has its own District Attorney who is responsible for decisions respecting the prosecution of defendants within that county, including the decisions when to file capital murder charges against persons accused of first-degree murder, and when to seek the death penalty against those charges with special circumstances first-degree murder.  Cal. Gov't Code § 26501; Keenan v. Superior Court, 126 Cal.App.3d 576, 581-85 (1981).  In the absence of any statewide standards to determine which of those defendants who meet the capital murder criteria will actually be deemed death-eligible and charged with death by the prosecutor, the crucial determination of whether the defendant's life will be at stake at a penalty trial turns more on the county in which the killing occurred than it does on the facts and circumstances of the killing or the individual characteristics of the defendant.  Because the decision whether to seek the death penalty against a potentially death-eligible defendant is left to the discretion of the prosecutor in the county where the crime was committed and each county may and does, in fact impose its own standards (or none at all), for deciding who will face death, the implementation of the death penalty in California violated the Equal Protection Clause.
> Further, discriminatory impact is apparent in this case where the Shasta County District Attorney chose to seek the death penalty against petitioner.  Similarly situated defendants in other counties would not have been charged with the death penalty, despite the fact that under state law, they were charged with a capital offense and thus death could have been sought by the local district attorney.

1  Because petitioner is Caucasian, he does not argue that application of the death penalty in

2  California results in discrimination based on race.   Rather, he alleges discrimination based on

3  location and demographics.

4          Respondents' counsel indicated at the January 8, 2008, hearing that he believed

5  the remaining portion of Claim EE could be resolved on the existing record.  Petitioner's

6  counsel, however, argued that this claim requires extensive discovery.  First, counsel observed

7  that a similar claim is being litigated in other cases pending in this district:  Frye v. Calderon,

8  CV-S-99-0628-LKK-KJM, and Riel v. Woodford, CV-S-01-0507-LKK-KJM.  In Frye, the

9  orders discuss Claim 37, which is described in a December 3, 2002, order, as follows:

10        . . . In claim 37 petitioner alleges that California's death penalty
      scheme fails to adequately narrow the class of persons eligible for the
11        death penalty as required by the Eighth Amendment.

12  The claim was similarly described in an October 6, 2003, order (Doc. 123 in Frye) as follows:

13        . . . In claim 37, petitioner alleges that the California death penalty scheme
      fails to narrow the class of murderers eligible for the death penalty . . .
14        because California's special circumstances are so broad.  Claim 37 is
      supported by a study (the "Shatz study") of 404 first degree murder cases.

15

16  Thus, Claim 37 as raised in Frye is the "narrowing claim" which has been dismissed in this case.

17  Similarly, in Riel, the orders discuss Claim 36, which is described in a July 15, 2003, order as the

18  "Narrowing Claim."  Based on the foregoing, and contrary to counsel's assertions in this case,

19  the claims raised in Frye and Riel are not the same as what remains of Claim EE raised in this

20  case.  Specifically, the "narrowing claim" component was dismissed in this case by Judge Levi.[3]

21  / / /

22  / / /

23  / / /

24

25      [3]    Judge Karlton, who is the district judge assigned in Frye and Riel, concluded that
the narrowing claim is not foreclosed by the Ninth Circuit's decisions in Mayfield v. Woodford,
270 F.3d 915 (9th Cir. 2001), and Karis v. Calderon, 283 F.3d 1117 (9th Cir. 2002).  Judge Levi
26  read Mayfield and Karis differently and concluded that the narrowing claim is foreclosed.

The court pointed this out to petitioner's counsel, who next argued that Claim EE nonetheless requires discovery similar to discovery ongoing in <u>Frye</u> and <u>Riel</u>. As outlined in their motion for leave to conduct discovery, counsel contend the following discovery is needed:

1.   A list of each conviction in a California adult homicide case where the crime occurred on or after November 8, 1978, to present, identifying the name of each defendant, the county in which the case originated, and its Superior Court case number;

2.   The Probation Officer's report in each and every adult first degree murder conviction case in California during the years beginning on January 1, 1981, and ending on December 31, 1991;

3.   A list of each adult homicide case filed in the counties of Shasta, Lassen, Modoc, Plumas, Siskiyou, Tehama, and Trinity, where the crime occurred on or after November 8, 1978, to the present, identifying the name of each defendant, the county in which the case originated, and its Superior Court case number, and whether or not the death penalty was sought by the prosecutor in each case;

4.   The Probation Officer's report in each and every first or second-degree murder case filed in the counties of Shasta, Lassen, Modoc, Plumas, Siskiyou, Tehama, and Trinity, where the crime occurred on or after November 1, 1978, to the present;

5.   Respondents identify persons best able to testify regarding information collected according to "BCS/LEIC" standard homicide codes, including the dates on which such information began being colleted, the sources of information collected , and the existence of any database containing or able to access information;

6.   Depositions of the persons identified in response to no. 5;

7.   Records-only depositions of the District Attorneys of Shasta, Lassen, Modoc, Plumas, Siskiyou, Tehama, and Trinity Counties, or the person designated by the District Attorney, to produce any and all documents setting forth or establishing policies, procedures, and/or criteria used in deciding whether or not to seek the death penalty in a capital murder case from November 8, 1978, to the present; and

8.   Records-only deposition of the Attorney General of the State of California, or the person designated by the Attorney General, to produce any and all documents setting forth or establishing policies, procedures, and/or criteria to be used by county prosecutors to decide whether or not to seek the death penalty in a capital murder case from November 8, 1978, to the present, and any and all communications from the Attorney General or his deputies regarding whether capital charges should be brought or the death penalty should be sought in a case or class of cases.

Without expressing an opinion as to whether this discovery would be appropriate, the court does find that discovery is not <u>necessarily</u> required to resolve the claim.  In other words, it is possible the claim could be resolved on the current record.  In <u>Campbell v. Kincheloe</u>, a 1987 death penalty case out of Washington, the Ninth Circuit addressed a very similar equal protection claim and stated:

> Campbell argues that Washington's capital punishment statute is unconstitutional because it vests unbridled discretion in the prosecutor to decide when to seek the death penalty.  That argument has been explicitly rejected by the Supreme Court.. . .
>
> 829 F.2d 1453, 1465 (9th Cir. 1987) (citing <u>Gregg v. Georgia</u>, 428 U.S. 153, 199, 255 (1976); <u>Proffitt v. Florida</u>, 428 U.S. 242, 254 (1960); and <u>Jurek v. Texas</u>, 428 U.S. 262, 274 (1976)); <u>c.f.</u> <u>United States v. Mitchell</u>, 502 F.3d 931, 982 (9th Cir. 2007).

In <u>Gregg v. Georgia</u>, Justice White stated in his concurring opinion that it cannot be assumed prosecutors will be motivated in their charging decisions by factors other than the strength of their case and the likelihood a jury would impose the death penalty.  <u>See</u> 428 U.S. at 199, 255.  In other words, the strength of the prosecutor's case is sufficient to justify the decision to seek the death penalty.  Based on the facts as determined by the state court, it may be possible for this court to determine whether the prosecutor was justified in seeking the death penalty in petitioner's case.

Petitioner's counsel state that Judge Levi, in his order granting reconsideration as to Claim EE, specifically determined that fact development was necessary to resolve the claim. The court does not agree with this reading of Judge Levi's order.  In his motion for reconsideration, petitioner argued: (1) the court misconstrued petitioner's claim; and (2) the cases cited by the court do not preclude the claim.  Petitioner also argued that further fact development was necessary, but only as to the "narrowing claim" component.  Specifically, petitioner argued:

> Petitioner's narrowing claim is thus much different than the related claims as presented to the Ninth Circuit in <u>Karis</u> and <u>Mayfield</u>.  This critical distinction is evidenced by the on-going proceedings in several cases in the Eastern and Northern Districts of California, which have allowed discovery and an evidentiary hearing on the "as-applied" aspect <u>of</u>

1    the narrowing claim.  (emphasis added).

2  Thus, according to petitioner, Karis and Mayfield discussed the legal aspect of the narrowing

3  claim, and the Frye and Riel cases deal with the as-applied aspect of the narrowing claim.  The

4  remaining portion of Claim EE in this case does not involve the "narrowing claim."  Judge Levi

5  granted reconsideration as to the as-applied equal protection component of Claim EE, but did not

6  state that further fact development was necessarily required to resolve the claim.  This was

7  petitioner's argument as to other aspects of Claim EE, not a holding of this court.

8         Having considered the parties' arguments, the court finds that it would be

9  appropriate to consider further Phase III initial merits briefing on the remainder of Claim EE.

10        **B.    Motion for Leave to Conduct Formal Discovery**

11        As indicated above, petitioner has filed a motion for leave to conduct formal

12  discovery with respect to Claim EE.  In light of the court's intention to consider whether Claim

13  EE is amenable to a decision on the merits on the existing record, it is not necessary to consider

14  petitioner's discovery motion at this time.[4]

15        **C.    Motion for Evidentiary Hearing**

16        At the January 8, 2008, hearing, the court elicited from counsel estimates as to

17  when a motion for an evidentiary hearing could be filed.  However, for reasons discussed in the

18  court's supplemental Phase III budget order, the court finds that it is premature to set a briefing

19  schedule at this point in time.  The court will conduct a further Phase III case management

20  conference hearing following completion of briefing on the five claims addressed in this order.

21  / / /

22  / / /

23  / / /

24  ──────────────

25      [4]    The Clerk of the Court will be directed to terminate petitioner's motion as a
pending motion.  This does not mean that the motion will be deleted from the docket or that
petitioner will have to re-file the motion.  This action is taken purely for administrative reporting
26  purposes.

9

# III.  CONCLUSION

The court hereby establishes the following schedule for the parties to submit objections, and responses thereto, to the court's May 15, 2007, findings and recommendations:

| | |
|---|---|
| Objections due: | April 30, 2008 |
| Responses to objections due: | June 30, 2008 |

For the reasons discussed above, the court finds it appropriate to consider further Phase III initial merits briefing on Claims W, Y, CC, EE, and NN.  The following briefing schedule is established for further initial merits briefing on Claims W, Y, CC, EE, and NN:

| | |
|---|---|
| Respondents' opening brief due: | September 17, 2008 |
| Petitioner's answering brief due: | November 17, 2008 |
| Respondents' reply brief due: | December 17, 2008 |

By calling for further initial merits briefing, this is not to say that the court concludes that no discovery could ever be appropriate for these claims (particularly Claim EE). Rather, the court desires to explore whether these claims can be resolved without the need for discovery.  If the claims cannot be resolved on the existing record, petitioner will be free to pursue discovery.  The court thus makes clear that nothing in this order necessarily forecloses the possibility of discovery on any of these claims.  If necessary, the court will take up petitioner's motion for leave to conduct formal discovery on Claim EE at a later date.  The court will also discuss with the parties at a later date a briefing schedule for a motion for evidentiary hearing.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Accordingly, IT IS HEREBY ORDERED that:

1.     The parties may file objections to the court's May 15, 2007, findings and recommendations, and responses thereto pursuant to the schedule set forth above;

2.     The parties shall brief the merits of Claims W, Y, CC, EE, and NN pursuant to the schedule set forth above; and

3.     Further briefing on petitioner's motion for leave to conduct formal discovery concerning Claim EE is suspended and the Clerk of the Court is directed to administratively terminate the matter as a pending motion.

DATED: January 28, 2008

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE

11